UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                      CRIMINAL ACTION

VERSUS                                                                              NO. 14-128

MATTHAIOS FAFALIOS                                           SECTION "K"(4)

ORDER AND REASONS

Before the Court is the Defendant Matthaios Fafalios' Motion for Judgment of Acquittal (R. Doc. 101). Having reviewed the motion, memoranda, record, and relevant law, the Court DENIES the motion for the following reasons.

I.   BACKGROUND

Defendant, Matthaios Fafalios, a Greek foreign-national, served as the Chief Engineer of *M/V Trident Navigator*, a bulk carrier cargo ship. On January 18, 2014, the ship entered the jurisdiction of the Eastern District of Louisiana, and the United States Coast Guard undertook an inspection and investigation of potential violations of international and United States law, including the Act to Prevent Pollution from Ships (APPS), 33 U.S.C. § 1901, *et seq*. On June 26, 2014, the grand jury returned a indictment in this case, charging the Defendant with three counts: (i) a violation of APPS, 33 U.S.C. § 1908(a); (ii) obstruction of justice, 18 U.S.C. § 1505; and (iii) witness tampering, 18 U.S.C. § 1512(b)(3). Trial began on December 8, 2014, and continued through December 15, 2014. At the close of the Government's evidence on December 12, 2014, the Defendant made oral motions pursuant to Rule 29 for judgment of acquittal on Count One. The Court reserved ruling on the motion but allowed Defendant to renew its motion after the trial. On December 6, 2014, the jury returned a verdict of guilty as to all counts. After the jury verdict Defendant thereafter re-urged his motion for acquittal.

1

## II.     LEGAL STANDARD

A motion for judgment of acquittal challenges "the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007)(quoting *United States v. Lucio,* 428 F.3d 519, 522 (5th Cir.2005)). Rule 29(a) of the Federal Rules of Criminal Procedure provides that after the government closes its evidence or after the close of all evidence, on a defendant's motion, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." As the Supreme Court stated in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See also United States v. Hope,* 487 F.3d at 227–28.  The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995)(citation omitted). "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld." *Lucio,* 428 F.3d at 522.

In viewing the evidence in the light most favorable to the prosecution, the court must "consider the countervailing evidence as well as the evidence that supports the verdict in assessing sufficiency of the evidence." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011)(quoting *United States v. Brown,* 186 F.3d 661, 664 (5th Cir.1999)); *see United States v. Peterson*, 244 F.3d 385, 389 (5th Cir.2001) ("All evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence."). The court must also draw upon "*reasonable* inferences from the evidence to support the verdict." *United States v. Percel,* 553

F.3d 903, 910 (5th Cir.2008) (quoting *United States v. McDowell,* 498 F.3d 308, 312 (5th Cir.2007)) (emphasis added). Though the court may not "weigh[] the evidence or assess[] the credibility of witnesses," *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996)(citations omitted), "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland,* 665 F.3d 137, 149 (5th Cir.2011) (quoting *United States v. Rojas Alvarez*, 451 F.3d 320, 333-34 (5th Cir. 2006)).

Nevertheless, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008) (quoting *United States v. Ortega Reyna*, 148 F.3d 540, 543 (5th Cir.1998)). "Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Vasquez*, 677 F.3d 685, 692 (5th Cir.2012). "But the evidence presented must allow the jury to find every element of the offense beyond a reasonable doubt." *United States v. Uvalle–Patricio*, 478 F.3d 699, 701 (5th Cir.2007) (internal quotation and citation omitted). If the evidence "gives equal or nearly equal circumstantial support to a theory of guilt or innocence," the court should reverse because "under these circumstances a reasonable jury must necessarily entertain a reasonable doubt." *Mendoza,* 522 F.3d at 488-89 (quoting *United States v. Ramos–Garcia,* 184 F.3d 463, 465 (5th Cir.1999)).

**III.   DISCUSSION**

Count One of the Indictment charged the Defendant with a violation of the Act to Prevent Pollution from Ships, 33 U.S.C. § 1908(a), as follows:

>On or about January 18, 2014, within the navigable waters, internal waters, and ports of the Eastern District of Louisiana, defendant **MATTHAIOS FAFALIOS** did knowingly fail to maintain an Oil Record Book for the *M/V Trident Navigator* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges, and bilge waste that accumulated in machinery spaces were fully recorded. Specifically, on or about January 18, 2014, the defendant, **MATTHAIOS FAFALIOS**, failed to maintain an accurate Oil Record Book by failing to disclose a discharge of bilge water that had accumulated in a machinery space that had been made with bypass equipment and without the use of a properly functioning Oily Water Separator and Oil Content Monitor, all in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal Regulations, Section 151.25(a), (d), and (h) and the MARPOL Protocol, Annex I, Regulation 17, 1340 U.N.T.S. 61, 62 & 84.

(R. Doc. 1, 4).  In his Rule 29 motion, Defendant argues that the Government failed to meet its burden of proof with respect to Count One, the APPS charge under section 1908(a). Specifically, the Defendant alleges that Government failed to prove with sufficient evidence that the Defendant knowingly violated the regulations issued under APPS or the MARPOL Protocol.

The Act to Prevent Pollution from Ships, Title 33, United States Code, Section 1901, *et seq.*, represents Congress' implementation of two related marine environmental treaties to which the United States is a party: the 1973 International Convention for the Prevention of Pollution from ships and the Protocol of 1978 relating to the International Convention for the Pollution from Ships.  These treaties are known collectively as MARPOL 73/78 ("the MARPOL Protocol").  APPS authorizes the Coast Guard to "prescribe any necessary or desired regulations to carry out the provisions of the MARPOL protocol . . ." 33 U.S.C. § 1903(b)(1).  Thus, section 1908(a) of APPS makes it a crime to knowingly violate any of these provisions: "A person who knowingly violates the MARPOL Protocol, Annex IV to the Antarctic Protocol, this chapter, or the regulations issued thereunder commits a class D felony."  33 U.S.C. § 1908(a).

4

In Count One of the indictment, the Government charged the Defendant with violating MARPOL Protocol, Annex I, Regulation 17, 1340 U.N.T.S. 61, 62 & 84.  Paragraph one of Regulation 17 states that "[e]very oil tanker of 150 gross tonnage and above and every ship of 400 gross tonnage and above other than an oil tanker shall be provided with an Oil Record Book Part I (Machinery Space Operations)."[1]  Paragraph two states that:

> The Oil Record Book Part I shall be completed on each occasion, on a tank-to-tank basis if appropriate, whenever any of the following machinery space operations takes place in the ship:
> .1 ballasting or cleaning of oil fuel tanks;
> .2 discharge of dirty ballast or cleaning water from oil fuel tanks;
> .3 collection and disposal of oil residues (sludge and other oil residues);
> .4 discharge overboard or disposal otherwise of bilge water which has accumulated in machinery spaces; and
> .5 bunkering of fuel or bulk lubricating oil.[2]

Thereafter, Regulation 17, paragraph four notes that "[e]ach operation described in paragraph 2 of this regulation shall be fully recorded without delay in the Oil Record Book Part I, so that all entries in the book appropriate to that operation are completed."[3]  As to each entry, paragraph four specifies that "[e]ach completed operation shall be signed by the officer or officers in charge of the operations concerned and each completed page shall be signed by the master of the ship."[4]

In Count One of the indictment, the Government also charged the Defendant with violating Title 33, Code of Federal Regulations, Sections 151.25 (a), (d), and (h).  Not surprisingly, these sections reflect the same provisions discussed above in the MARPOL Protocol Regulation 17.  Section (a) sets forth the requirement that a "ship of 400 gross tons and

---

[1] MARPOL, Annex I, Reg. 17, *reprinted in* MARPOL 73/78: Articles, Protocols, Annexes, unified Interpretations of the International Convention for the Prevention of Pollution from Ships, 1973, as modified by the Protocol of 1978 relating thereto 94 (Int'l Mar. Org. 2001) (hereinafter "MARPOL Regulation 17").
[2] *Id.*
[3] *Id.*
[4] *Id.*

5

above other than an oil tanker . . . shall maintain an Oil Record Book Part I (Machinery Space Operations)." 33 C.F.R. § 151.25(a).  Section (d) specifies which entries must be made in the Oil Record Book (ORB):

> (d) Entries shall be made in the Oil Record Book on each occasion, on a tank to tank basis if appropriate, whenever any of the following machinery space operations take place on any ship to which this section applies—
> (1) Ballasting or cleaning of fuel oil tanks;
> (2) Discharge of ballast containing an oily mixture or cleaning water from fuel oil tanks;
> (3) Disposal of oil residue; and
> (4) Discharge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces.

33 C.F.R. § 151.25(d).  Section (h) of the regulations then describes the manner in which these entries must be recorded in the Oil Record Book:

> (h) Each operation described in paragraphs (d), (e) and (f) of this section shall be fully recorded without delay in the Oil Record Book so that all the entries in the book appropriate to that operation are completed. Each completed operation shall be signed by the person or persons in charge of the operations concerned and each completed page shall be signed by the master or other person having charge of the ship.

33 C.F.R. § 151.25(h).

Defendant argues in his motion that, as to Count One, "not only is the evidence so insufficient that no reasonable jury could find that there was a knowing failure to maintain the Vessel's [Oil Record Book,] . . . but the indictment and charges have been improperly pursued by the government against a person who does not have a duty under the law to maintain the ORB in the first place." (R. Doc. 101, 2).  Throughout the Defendant's memorandum in support of the motion and reply memorandum the Defendant focuses primarily on whether, as a matter of law, the Defendant could be liable for a violation of section 1908(a) as he was charged in the indictment.  Though Defendant makes a narrow argument as to the sufficiency of the evidence in

6

his reply memorandum, the Court must first address the argument that forms the crux of the Defendant's motion.

In essence, the Defendant's argument that, as a matter of law, he cannot be liable under section 1908(a) for the crime charged in Count One of the Indictment, challenges the sufficiency of the indictment, specifically as to whether the indictment fails to state an offense—if the statute does not specifically include the Defendant within its ambit, it necessarily fails to charge the Defendant with an offense.  A motion to dismiss an indictment for failure to state an offense challenges the sufficiency of the indictment and whether it conforms to minimum constitutional standards, namely that it contain the elements of the offense charged and fairly inform a defendant of the charge against which he must defend.  *See United States v. Kay,* 359 F.3d 738, 742 (5th Cir. 2004). While the Defendant argues that his Rule 29 motion is not a disguised Rule 12(b) motion, the Court agrees with the Government that this argument would have been properly raised as a Rule 12(b) motion before trial.[5]  "Fed.R.Crim.P. 12(b)(3)(B) provides that a 'motion alleging a defect in the indictment' must be made before trial[, and f]ailure to comply with this rule generally constitutes waiver." *United States v. Whitfield*, 590 F.3d 325, 359 (5th Cir. 2009)(citation omitted).  Though the Defendant may have had the option of filing the motion during trial or post-trial, pursuant to Rule 34, these options have now been foreclosed by Congressional amendments to the relevant statutes.[6]  The Defendant, in his reply brief, argues

---

[5] *See* R. Doc. 117, 2.
[6] *See* Fed. R. Crim. P. 12(b), Advisory Committee Comments, 2014 Amendments ("Rule 12(b)(3)(B) has also been amended to remove language that allowed the court at any time while the case is pending to hear a claim that the "indictment or information fails ... to state an offense." This specific charging error was previously considered fatal whenever raised and was excluded from the general requirement that charging deficiencies be raised prior to trial. The Supreme Court abandoned any jurisdictional justification for the exception in *United States v. Cotton,* 535 U.S. 625, 629-31 (2002) (overruling *Ex parte Bain,* 121 U.S. 1 (1887), "[i]nsofar as it held that a defective indictment deprives a court of jurisdiction")"); *see also* Fed. R. Crim. P. 34, Advisory Committee Comments, 2014 Amendments ("This amendment conforms Rule 34 to Rule 12(b) which has been amended to remove language that the court at any time while the case is pending may hear a claim that the "indictment or information fails ... to state an offense." The amended Rule 12 instead requires that such a defect be raised before trial.")

7

that the crime charged in Count One is "non-existent," and that Fifth Circuit precedent has not foreclosed the possibility of raising his argument based on his contention that the crime as charged does not exist.[7]  Yet the Court understands Fifth Circuit precedent, Supreme Court precedent, and the Federal Rules of Criminal Procedure to stand squarely for the proposition that the defect of failing to state an offense is non-jurisdictional and must be raised under Rule 12(b) or else be waived.[8]  Notwithstanding this fact, the indictment's statement of elements of section 1908(a) remains relevant: under Rule 29, to determine whether the Government presented sufficient evidence such that a rational jury could find that each element of the offense was proven beyond a reasonable doubt, the Court must examine the elements of the offense. Whether the Defendant was a person who could be charged under the statute formed an element of the offense as charged.  Thus, the Court will undertake an analysis of this issue as it relates to its Rule 29 determination.

        A.     **Act to Prevent Pollution from Ships Violation as Charged**

Defendant argues that, to be liable for failing to maintain an oil record book, the Government must charge him under section (j) of the Coast Guard regulations, which states the following: "[t]he *master or other person having charge of a ship* required to keep an Oil Record Book shall be *responsible for the maintenance of such record*." 33 C.F.R. § 151.25(j)(emphasis added).  The indictment frames the charge in terms of a "failure to maintain an accurate Oil Record Book," which, the Defendant argues, parallels the language of section (j) by making a

---

[7] The Defendant argues that one exceptional argument may remain based on the Fifth Circuit's dicta in a footnote in *United States v. Scruggs*, 714 F.3d 258, 263 (5th Cir.) *cert. denied*, 134 S. Ct. 336, 187 L. Ed. 2d 158 (2013).  The Fifth Circuit stated: "In *Meacham*, the statutory offense alleged in the indictment did not exist. Conceivably Meacham may remain good law in that very narrow circumstance because an indictment that charges a violation of a non-statute does not give rise to subject matter jurisdiction under § 3231. But after Cotton it cannot be read to mean that factual failure to allege a violation of a valid federal statute is a jurisdictional flaw." *Scruggs*, 714 F.3d at 263 n.22 (citation omitted).  However, the Court's analysis will show that *Meacham* is distinguishable in that the statute in this case does exist and can be made applicable to the Defendant.
[8] *See supra,* note 6.

8

clear reference to the responsibility to "maintain" an oil record book.  Yet the Defendant notes that the indictment does not charge him with a violation of section (j) and instead charges him with violations of sections (a), (d), and (h) of the Coast Guard regulations, which make no specific reference to persons responsible for "maintenance" of an oil record book.  Moreover, neither MARPOL nor APPS generally set forth any rule similar to section (j), proscribing a clear responsibility for maintenance of the oil record book to a specific person.  Defendant thus concludes that the Government attempted to import a duty belonging to the master of the ship into the charge brought against the Defendant, the Chief Engineer, creating a legal duty (and statutory offense) that does not exist as to this Defendant.

   The Court cannot agree. Section 1908(a) makes it an offense for "[a] person" who "knowingly violates" either the MARPOL Protocol, APPS, *or* the regulations issued under APPS.  *See* 33 U.S.C. § 1908(a).  Thus, in the abstract, section 1908(a) criminalizes any knowing violation of *any* regulation committed by "[a] person."  This exceedingly broad statute is narrowed by the specificity of the requirements in the Coast Guard's regulations.  Section (d) requires that entries be made in the oil record book for every machinery space operation; section (h) requires that each completed entry be signed by the person or persons in charge of those operations.  33 C.F.R. §§ 151.25(d) & (h).  Thus, the Indictment discussed the Defendant's duty to record machinery space operations in the oil record book, which include discharges of bilge water, in accord with the requirements of sections (d) and (h).[9]  These requirements are also discussed in MARPOL.  Though not a self-executing treaty, as Defendant points out, section 1908(a) specifically makes violations of MARPOL a criminal offense.  Regulation 17 of MARPOL requires "officers in charge" of machinery space operations to make entries in the oil

---

[9]The indictment specifically states: "Defendant **MATTHAIOS FAFALIOS** was a person in charge of operations in the engine room and that he was required to record in the ORB." (R. Doc. 1, 4).

record book.  Thus, the indictment also included this section of MARPOL in its charge against the Defendant.

However, the Indictment does charge the Defendant with "failing to maintain" an oil record book by failing to record such entries.  Defendant does not contest the fact that, under section (h), a person in charge of a machinery space operation would be required to record the operation in the oil record book; however, he argues that the same person would not be considered a "person having charge of the ship" and have the responsibility for "maintenance" of the oil record book.[10]  In arguing that the Defendant has no duty to maintain the oil record book, Defendant relies heavily on *United States v. Kun Yun Jho*, 465 F.Supp.2d 618 (E.D. Tex. 2006), *rev'd on other grounds*, 534 F.3d 398 (5th Cir. 2008), a similar case involving the prosecution of a chief engineer of a ship and the company that owned the ship for failure to "maintain" an oil record book.  A close reading of the opinions rendered in that case reveals that the present issue is simply one of semantics.

The district court in *Jho* stated in a footnote that, while not necessary to reach this point, "it is worth noting that Captain Jho—as chief engineer but not the master of the *Pacific Ruby*—is not even the person required by the Coast Guard regulations to maintain the oil record book." 465 F.Supp.2d at 624 n.2.  In its discussion of Jho's argument that he was not responsible for maintenance of the oil record book, the court noted that the "problem which arises here is that it appears that the Government may have indicted Defendant for not 'maintaining' an Oil Record Book," when, as a chief engineer, he was not alleged to be the master or other person in charge of the ship.  *Id.* at 643.  Yet the court found that there was not sufficient ground for dismissal at that time and that proof at trial could show that Jho "aided and abetted" the owner of the ship or

---

[10] Notably, the Coast Guard regulations do not define "maintain" or "maintenance" as used in that section.  *See* 33 C.F.R. §§ 151.25, 151.05.

10

others who were in charge of the ship in failing to maintain the oil record book. *Id.* On appeal, the Fifth Circuit interpreted the "duty to maintain" an oil record book as "imposing a duty upon a foreign-flagged vessel to ensure that its oil record book is accurate . . . upon entering ports of navigable waters of the United States." *United States v. Jho*, 534 F.3d 398 (5th Cir. 2008). Briefly addressing in dicta the argument Jho was not the master or other person in charge of the ship, the Fifth Circuit stated in a footnote that "[e]ven assuming this to be true, it is inapposite as the government charged Jho with aiding and abetting the oil record book offenses." *Id.* at 401 n.1.

Critically, in that case, Jho was also charged with conspiracy to violate APPS along with the owner of the ship, Overseas Shipholding Group, Inc. *See id.* at 401. In addition, Jho was charged with knowingly failing to maintain an oil record book under Title 33, United States Code, Section 1908(a), Title 33 C.F.R., Section 151.25, and Title 18, United States Code, Section 2. *Kun Yun Jho,* 465 F.Supp.2d at 628. By contrast, the Defendant in this case was charged under Section 1908(a) with specific violation of sections 151.25 (a), (d), and (h) of the Coast Guard regulations and specifically of Regulation 17 of the MARPOL Protocol. The differentiation in the charges lies in the source of the duty to "maintain" the oil record book. In section 151.25(a) of the Coast Guard regulations, a ship of a certain tonnage must "maintain an Oil Record Book Part I (Machinery Space Operations)." 33 C.F.R. 151.25(a). Similarly, regulations provide that the master or other person in charge of the ship is responsible for "maintenance" of the oil record book in section (j). Section (k) also provides that "[t]he Oil Record Book for a U.S. ship shall be *maintained* on board for not less than three years." 33 C.F.R. § 151.25(k). Based on the Fifth Circuit's discussion of the duty to maintain and the use of the term "maintain" in sections (a), (j), and (k) of the Coast Guard regulations, it is apparent

11

that there is a distinction between maintaining (i.e., keeping) the oil record book and making entries (i.e., recordation) in the oil record book.  In *Jho*, the owner of the ship was required to "maintain" an oil record book under section (a), and the defendant, Jho, would be aiding and abetting under 18 U.S.C. § 2 in that instance.  The requirement that entries be made in the oil record book and the requirement that the oil record book be "maintained" are thus separate.

The specific statutory sections under charge in Count One brought against the Defendant in this case further support this conclusion.  MARPOL Regulation 17 and sections (d) and (h) of the Coast Guard regulations make clear that an obligation to record entries in the oil record book undoubtedly exists. This responsibility derives from the requirement that each "machinery space operation" must be "fully recorded without delay"; though sections (d) and (h) and MARPOL Regulation 17 require the officer or person in charge that operation to *sign* each operation, this obligation to sign, similar to the obligation to "maintain," is distinct from ensuring that each operation is "fully recorded."  *See* 33 C.F.R. § 151.25(h); MARPOL Regulation 17, ¶ 4.

In sum, as the district court stated in *Jho*, the difficulty here lies in the Indictment's use of the word "maintain."  The Government, in its opposition, asserts that the word "maintain" as it was used in the Indictment in this case, "refers to the defendant's obligation to ensure that the operations he was responsible for, and that were required to be recorded in the ORB, were in fact done."  (R. Doc. 117, 5).  Throughout the Indictment, the Government details the responsibility of the Defendant to make entries and ensure the completeness and accuracy of the in the oil record book as to machinery space operations.[11]  The Court, with the same understanding, thus charged the jury with the elements of the offense as follows:

> *First*: that the M/V Trident Navigator was a ship of 400 or more gross tons that was registered in a country other than the United States;

---

[11] *See supra* note 9.

> As I told you earlier, the parties have stipulated that the M/V Trident Navigator is a ship of 400 or more gross tons that was registered in the Republic of the Marshall Islands, a country other than the United States. Therefore, you are to consider this fact proven.
> *Second*: that the Defendant was responsible for the maintenance of the Oil Record Book;
> *Third*: that the Defendant knowingly failed to fully and accurately maintain the Oil Record Book, in which machinery space operations were to be recorded without delay, specifically, (a) all disposals of oil residue, and (b) all discharges overboard or disposal otherwise of bilge water that accumulated in machinery spaces; and
> *Fourth*: that the knowingly inaccurate Oil Record Book entered the navigable waters of the United States, within the Eastern District of Louisiana, onboard the M/V Trident Navigator on or about January 18, 2014.

The Court also explained in its jury charges that "maintenance," as it is used in the charge, refers "to the responsibility to 'maintain' the Oil Record Book, or to ensure that the Oil Record Book both *fully* and *accurately* records the machinery space operations."[12]  Therefore, despite the apparent confusion regarding the use of the word "maintain" in the Indictment and ultimately caused by imprecisely worded regulations, the Court turns to the question of whether the Government presented sufficient evidence as to the elements of the crime such that a rational jury could find the elements proven beyond a reasonable doubt.

**B.     Rule 29 Analysis**

The Court agrees that, as the Government noted in its opposition, generally the "Defendant does not outline or discuss how the evidence at trial did not prove the elements of the crime beyond a reasonable doubt."  (R. Doc. 117, 2).  The Government averred that the evidence at trial showed (i) "Defendant failed to record a discharge," (ii) Defendant "was the one who

---

[12] The Court also defined "machinery space operations," which included the disposal of bilge water. The Court did not, however, add an "aiding and abetting" charge as the Government noted in its Opposition. Unlike the defendant in *Jho*, the Defendant, Mr. Fafalios, was not charged with engaging in a conspiracy with the company/owner of the ship, nor was Mr. Fafalios charged in the original indictment with aiding and abetting; the facts of this case are unquestionably distinguishable.

13

kept the ORB in his cabin," (iii) Defendant "made all of the entries," and (iv) "when the Coast Guard asked for the ORB it was the defendant who produced it." (R. Doc. 117, 5-6). Defendant later argued in his reply memorandum, however, that he "never said, and the government never established evidence at trial that he was the person required to make all entries and maintain the accuracy of the ORB." (R. Doc. 118, 11).

Nonetheless, the Government adduced facts, testimony, and exhibits at trial showing that the Defendant was in charge of machinery space operations as a chief engineer and was responsible for ensuring that the oil record book fully and accurately recorded the machinery space operations. Viewing the evidence in the requisite light most favorable to the prosecution and drawing all reasonable inferences in support of the verdict, the Court finds that the Government presented sufficient evidence to support the jury's verdict on Count One of the Indictment. The Court has undertaken extensive review of the testimony presented, without weighing the credibility of the witnesses, *Lopez*, 74 F.3d at 577, and construing the jury's credibility determinations in the light most favorable to the verdict, *Mendoza*, 522 F.3d at 488. Captain Lychoudis offered testimony establishing that the chief engineer was responsible for ensuring the oil record book was completed, fully and accurately.[13] Further, the Defendant himself offered testimony establishing that: (i) the Defendant wrote the entries in the oil record book, relying on information from the second engineer who signed some entries; (ii) the Defendant wrote and signed an entry himself; and (iii) that the Defendant kept the oil record book in his cabin.[14] The evidence sufficiently establishes that the Defendant was responsible for ensuring that the machinery space operations were "fully recorded without delay in the Oil Record Book so that all the entries in the book appropriate to that operation are completed,"

---

[13] Tr. Trans., Efthymios Lychoudis, 38:14-19 (December 11, 2014).
[14] *See* Tr. Trans., Matthaios Fafalios, 53:25 – 54:1-18; 99 – 100:9-15; 101:1-9; 121 – 122:4 (December 15, 2014).

14

wrote the entries himself, and failed to discharges required to be made as entries in the ORB. *See* 33 C.F.R. §§ 151.25(d), (h).  Thus, the Court concludes that the evidence was sufficient for the jury to rationally reach its verdict, finding that every element of the crime charged in Count One had been proven beyond a reasonable doubt.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Judgment of Acquittal (R. Doc. 101) is **DENIED**.

New Orleans, Louisiana, this 1st day of February, 2015.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**